## LAWSON v BRICKER et

Ohio Appeals, 2nd Dist, Franklin Co

No 2548. Decided Nov 22, 1935

Williams, Williams & Klapp, Columbus, for International Reinsurance Corporation.

Fred R. Hoover, Columbus, for Fred R. Hoover.

Chalmers M. Parker, Columbus, for Thomas W. Lawson.

Arthur L. Rowe, Columbus, for National Guarantee & Finance Co.

W. E. Minshall, Cleveland, and Chalmers M. Parker, Columbus, for Lottie Schwartz.

Kramer, Helling & Kramer, Canton, and Max E. Arons, Columbus, for Rose Fisher.

these are in controversy in our court, nor do they have any bearing upon the claim of plaintiff in error, Thomas W. Lawson. A poster was pasted on the front cover, on which had been typewritten "BILL OF EXCEPTIONS FILED ON BEHALF OF DEFENDANT THOMAS W. LAWSON." An extra page was added at the end, marked page 132, as follows:

"And thereupon, the court, on the 15th day of March, 1935, finding against the defendant Thomas W. Lawson, to which finding said defendant excepted, said defendant Thomas W. Lawson tenders this his bill of exceptions, which is allowed, signed, sealed and ordered to be made a part of the record.

John R. King
Judge of the Court of Common Pleas."

There is no showing that the bill of exceptions, as such, was filed in the Court of Common Pleas and notice given to opposite counsel of such filing; neither do we find any waiver. In fact, none of the usual steps are shown to have been taken.

Of course, these irregularities are not vital, provided the bill of exceptions was, in fact, filed in the Court of Common Pleas. The transcript of the docket and journal entries of the Common Pleas Court state that the bill of exceptions was filed April 10, 1935, although no file mark of this date appears on the bill of exceptions itself.

This report of the Master Commissioner, attempted to be filed as a bill of exceptions, does not contain any of the exhibits referred to throughout the evidence and hence by reason of this fact, if none other, we can not consider it as a bill of exceptions.

"Although a bill of exceptions stated that it contains all the evidence offered on the trial, yet, if, on examination, it shows that material evidence or documents referred to are omitted a reviewing court will not reverse on the ground that the verdict is against the evidence."

**Armleder v Lieberman, 33 Oh St, 77.**

In the Master Commissioner's report, on page 6, we find the following:

"Your Master has elected to divide his report into four volumes—Volume 1 containing a brief history of the case, an enumeration of all law cited and examined, and a report on each individual claim filed; Volume 2 containing all briefs filed; Volume 3 containing a transcript of the testimony taken at the hearings; and Volume 4

## OPINION

By BARNES, PJ.

These are the first questions to be considered and determined. The so-called bill of exceptions, containing 132 pages of typewritten matter, is, to say the least, very informal without any effort made to follow the statutory steps.

It is very apparent that on behalf of plaintiff in error, Thomas W. Lawson, Volume 3 of the report of the Master Commissioner has been filed as a bill of exceptions. This volume contains the evidence pertaining to all claims and very few of

containing the exhibits placed in evidence at the hearings. All volumes are indexed."

This explains why the exhibits are not found in Volume 3 of the Master's report marked as a bill of exceptions. Under the Master's plan these exhibits would be found in Volume 4, but we do not find Volume 4 among the papers.

Touching the question of pleadings by claimants we think that §642, GC, wherein it is provided that persons claiming to have an interest in the fund shall be required to answer means that the usual rules of pleading should be followed. The provision of §643, GC, in substance that the Code of Civil Procedure shall govern the proceedings in so far as is applicable, is also persuasive that claimants should present their claims through pleadings.

No replies were filed to any of the answers or answers and cross-petitions of the claimants and hence all uncontroverted issues of fact must be accepted as true.

We also hold that the report and original findings of the Master Commissioner constitute an original document in the case and entitled to be filed in our court as such.

Sec 11490, GC, reads as follows:

"Upon motion of a party, the court or a judge thereof in vacation, may refer an action in which the parties are not entitled to a trial by jury, to a regular or special master commissioner, to take the testimony in writing, report it to the court, and therewith his conclusions on the law and facts involved in the issues, which report may be excepted to by the parties, and confirmed, modified, or set aside by the court."

The motion and entry by which the Master Commissioner was appointed were all inclusive.

Judge Day, in the case of Gill v Geyer, 15 Oh St, 399, at page 409, in commenting on this identical question, uses the following language:

"But whether the evidence was before the court or not, the record shows that the master's report and exceptions to it were a part of the files and proceedings in the case, and, therefore, were properly before it."

We quote from the case of Smith et v The Board of Education, 27 Oh St, 44, syllabus 3:

3. "What shall constitute the record of a case, is regulated by statute, and any paper the statute authorized to become part of the record may be made part thereof, without an express order of the court to that effect."

It is our conclusion that the report of the Master Commissioner, making findings of fact and law as ordered by the court, was authorized under §11490, GC, supra, and thereby becomes an original paper in the cause.

We therefore have sufficient before us to pass on all questions raised by the petition in error and the cross-petitions in error of the parties prosecuting error in this court.

This will not apply to Lottie Schwartz, since she did not file petition or cross-petition in error. There are instances in which parties are jointly or severally interested where the petition in error of one will inure to the benefit of all. In the instant case the claims of all claimants were separate and distinct. It therefore follows, if for no other reason, that no relief could be granted Lottie Schwartz by reason of her failure to file proceedings in error.

We now proceed to determine the questions raised by claimants under their proceedings in error.

The Master Commissioner, in his report, submitted a well reasoned opinion holding against the several claimants now prosecuting error in this court. This report, in a short memorandum opinion, was concurred in by the trial court.

We have carefully examined the record and all briefs submitted; also have read the cases and sections of the Code cited and referred to.

We have no difficulty in sustaining the judgment of the court below in toto, and this upon the opinion of the Master Commissioner concurred in by the trial court.

Ordinarily it would not be necessary to make further comment, and we would not so do in this case but for the fact that counsel, in support of the proceedings in error, urge very earnestly that the Master Commissioner adopted a wrong premise.

Very briefly, we announce our views on these controverted questions.

The claims of Thomas W. Lawson, plaintiff in error, The National Guaranty and Finance Company, and Rose Fisher, cross-petitioners in error, are identical in their general character, although different in amount and based on separate contracts of insurance. Each of the three was founded on a policy of insurance issued by Public Indemnity Company, a foreign insurance company, with its principal office at 1060 Broad Street, Newark, New Jersey. Each of the policies upon which the three claims were predicated were held by Ohio policyholders. In 1930 the Georgia Cas-.

ualty Company entered into some form of contract by which the Public Indemnity Company took over the assets of the Georgia and assumed all liabilities. It is the contention of the three petitioners in error above named that by reason of this contract Ohio policyholders of the Public were at once vested by law of an interest in the trust fund of $50,000.00 deposited by the Georgia Company with the Superintendent of Insurance. There is much discussion in the briefs as to the character of this contract; that is, whether it was a merger or a contract of reinsurance. While we do not have this contract before us, for reasons heretofore stated that Volume 4, containing exhibits, was not filed in our court, yet it is our conclusion that this is unimportant for the reason that the Georgia Company and Public Company could not, by any form of contract, change the status of the $50,-000.00 trust fund held by the Treasurer of State. A careful examination and analysis of §9510, GC, paragraph 2, can lead to no other conclusion, particularly in view of the fact that no showing is made that the Ohio policyholders of the Georgia Company participated in, had any knowledge of or consented to any contract or merger or reinsurance between the Georgia and the Public. When these contracts of insurance were issued by the Georgia to Ohio policyholders, the law at once vested in them a contingent interest in this trust fund required to be deposited with the Superintendent of Insurance as a guarantee for the payment of any obligations that might arise against the Georgia Company by reason of these Ohio policies. Thereafter the Georgia Company could do nothing to change the status of this fund. This fund was a continuing guarantee to Ohio policyholders of the Georgia Company so long as any such policies were outstanding. As new policies were written from year to year, each new policyholder was vested with an interest in this trust fund. No claim is made that under the contract between the Georgia Company and the Public any new contracts of insurance were issued or assumed by the Georgia Company. From the pleadings and report of the Master Commissioner it would seem that the import of the contract was just the opposite; that is, the Public assumed all liabilities of Georgia policyholders and took over all assets of the Georgia company.

Sec 641, GC, provides the only means by which the $50,000.00 in securities deposited with the Superintendent of Insurance could be liquidated or distributed in kind. We quote from this section the pertinent portion:

"Having ceased to do business within this state leaves unpaid any such liability or has become insolvent, the attorney general of the state on behalf of the superintendent of insurance, shall commence a civil action in the Court of Common Pleas of Franklin County making the company, corporation, or association, a party defendant, to determine the rights of all parties claiming any interest in such deposit, to subject the deposit to the payment or satisfaction of all liabilities and to distribute such fund among the persons entitled thereto."

This is exactly what was done in the instant case. The Attorney General, in his petition, alleges that the Georgia Casualty Company has ceased to do business within the State of Ohio and is insolvent, and prays that all persons, firms or corporations claiming any right, title or interest in the deposit be required to set up such interest and that the court make such distribution as is proper. From the report it is disclosed that following this proceeding in the Common Pleas Court, something like $45,-000.00 of claims from Ohio policyholders of the Georgia Company were presented and allowed. We can find no rule of law or equity whereby the Ohio policyholders of the Public Company would be permitted to participate in this $50,000.00 fund as preferred creditors.

It appears from the pleadings that the Public was a foreign insurance company and presumptively if it did business in Ohio would have to qualify. As such foreign insurance company desiring to do business in Ohio, it could either deposit $50,000.00 securities as required under §9510, GC, paragraph 2, or with §9510-7, GC. This supplemental section 7 was enacted in 1923 and therein it was provided that a foreign insurance company desiring to do business in Ohio might, in lieu of the deposit provided for in §9510, GC, make a deposit of $100,000.00 in securities with the Superintendent of Insurance of the state at its situs, or principal place of business. We must assume that the Public Company, before it did business in Ohio, qualified by making the requisite deposit of securities either in this state or in the state where it was incorporated. There can be no question that the Georgia Company retained a legal title to the $50,000.00 securities deposited, but such title was at all times subject to a contingent liability on behalf of

Ohio policyholders. By no act of theirs could they take away from the Superintendent of Insurance these trust securities held by the state as a guarantee that the Georgia Company would meet its obligations to its Ohio policyholders. If discontinuing business in Ohio it could not draw down the fund, but the Attorney General could, just as was done in the instant case, bring an action to determine any and all liabilities in favor of Ohio policyholders, and then turn in the balance, if any, to the Georgia Company. This interest in the balance, if any, was always a property right and could be sold either through merger or reinsurance. If transferred through merger or reinsurance, the balance, when ascertained, would pass to the new or reinsuring company, if so provided in the contract. This balance, when distributed, would be assets subject to the payment of general creditors. We can find no theory under which policyholders in the Public would have any lien either against the principal sum or the balance.

The claim of the cross-petitioner, Fred R. Hoover, is entirely separate and distinct from that of the other parties to the litigation. Mr. Hoover, a very capable lawyer of the Franklin County Bar, files very voluminous and persuasive briefs in support of his claim. We are not able to follow his conclusions, for the reason that we believe he starts on a wrong premise and therefore his reasoning and citation of authorities can not be given application.

The following brief statement of facts will render understandable the nature of this controversy and the manner in which it arises.

Prior to 1926, the County Treasurer of Franklin County, Ohio, had entered on his duplicate tax charges against the Georgia Company by reason of the $50,000.00 par value of securities deposited with the Superintendent of Insurance and held by the Treasurer of State, under the claim that this was the property of a foreign corporation used in its business within the state. In October, 1926, suit was brought by the County Treasurer against the insurance company for the claimed accumulated tax over a period of years, together with penalties. In this action Honorable Fred R. Hoover was employed to represent the insurance company. In September, 1933, the cause was terminated in favor of the Georgia Company. The amount involved was claimed to be approximately $11,500.00. Mr. Hoover's charge for his services was $2750.00, and this sum was admitted to be a reasonable charge in the report of the Master

Commissioner. Mr. Hoover, in his brief, conceded the prior rights of Ohio policyholders of the Georgia Company, but insists that his claim should be pronounced a preferred claim as against the balance in the hands of the Superintendent of Insurance for distribution. The report of the Master Commissioner discloses that there is a balance. However, in his opinion, he holds against the claimed preference and that the balance should be returned to the receiver of the defendant, the International Reinsurance Corporation. Mr. Hoover bases his claim for preference upon either of two theories. First, upon the well known trust fund theory, and, in the alternative, upon the theory of the lien of an attorney upon a fund which has been enriched by the services of the attorney. We are unable to conclude that Mr. Hoover presents a state of facts through which either one of the theories can be given application, and hence our former statement that we were unable to accept his premise.

As we view it, Mr. Hoover's services are characterized by the nature of the litigation in which he was appearing as counsel for the defendant, the Georgia Casualty Company. The action by the County Treasurer of Franklin County to recover taxes was merely seeking personal judgment. Under an action at law for personal judgment, no lien could be claimed against the bonds held by the Superintendent of Insurance. Personal taxes, unlike real estate taxes, are not a lien upon the moneys or personal property constituting the value through which taxes are assessed. Had the County Treasurer obtained personal judgment, he would have been in no different position than any other creditor. He would not have been in the favorable position of an Ohio policyholder claimant who obtained a personal judgment. The latter in the event the judgment was not paid, has a remedy against the fund. This fund, being deposited for a specific purpose, would not be subject to a lien for taxes since taxes were not included in the specific provisions. Had the County Treasurer obtained personal judgment, he then could have issued execution and levy might have been made against any property of the Georgia Company wherever found within the borders of Franklin County; or foreign execution might have been issued to any other county within the state; or, under the rules of comity, proper proceedings might have been brought within a proper court in some other state to enforce the judgment. However, a levy could not have been successfully made against the securities held by

the Superintendent of Insurance, for the reason that such securities were held in trust for a specific purpose and could not be subjected to other liabilities not embraced within the trust.

Sec 2658, GC, authorizes county treasurers to collect overdue taxes by distress, by distraining sufficient goods and chattels belonging to the person charged with such taxes if found within the county, but, for the reasons before stated, these trust certificates could not have been taken by the County Treasurer under distress. It is proper to say further that no attempt was taken to proceed under §2658. GC.

Mr. Hoover, in his brief, refers to the case of McGhee, Attorney General v Casualty Company of America, 15 Oh Ap, 457, syllabus 8.

"8. Taxes due the state under §5433, GC, are subordinate to the claims of policyholders as against the deposit fund in the hands of the state treasurer, but the same may be set off against any amount due the insurance company or its liquidator."

It must be noted that this refers to state taxes and not to county taxes, as we are dealing with in the instant case. §5433, GC, provides for an annual tax to be computed by the Superintendent of Insurance on the gross amount of business for the year, less deductions. Under the decision referred to in 15 Oh Ap, supra, this tax is not a lien upon the trust fund, nor does it at any time become such. It is subordinate to the claims of policyholders and is only payable out of the balance by way of set-off. The principle of set-off is entirely different from lien claims. This right of set-off could not possibly inure to a county treasurer under the facts in the instant case, because the securities or funds, after liquidation, were in the physical possession of the State Treasurer.

Under this situation it is our opinion that it can not be said that the litigation could in any way affect the trust fund, nor can it be said that the fund was preserved through the services of counsel in bringing the tax litigation to a successful termination in favor of the Georgia Casualty Company. As we view it, the attorney in this litigation stands in no more favorable light than did the attorney presenting claims in the case of McGhee, Attorney General v Casualty Company of America, 15 Oh Ap, 451. The opinion in this case was written by Judge Allread, a former very able member of this court. At page 475 he makes the following statement:

"THE FORD, SNYDER, TILDEN, KENNEDY, MANCHESTER AND CONROY CLAIMS. These are claims for legal services rendered on behalf of the Casualty Company in defense of claims made against policyholders. The claims of Ford, Snyder & Tilden against the Ohio deposit were disallowed, and, we think, properly. The attorneys were employed by the Casualty Company in pursuance to its contract obligation to defend its policyholders. The attorneys are general creditors of the Casualty Company, but are not entitled to the status of a policyholder under the Ohio statute."

Mr. Hoover thinks that Syllabus 5 in this case limits the application of this rule as against policyholders but not to the balances after Ohio policyholders are paid in full. We do not think, in the light of the reason under which the rule is formulated, that it can properly be given such a limited application.

We might say in passing that this McGhee case. supra, was the principal authority upon which the Master Commissioner bases his conclusions.

Finding no prejudicial error, the judgment of the court below will be affirmed and costs of this proceeding awarded against parties prosecuting error.

Exceptions will be allowed.

HORNBECK and BODEY, JJ, concur.